Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| STEPHANIE F., individually and on behalf of H.H. a minor,<br><br>        Plaintiff,<br><br>vs.<br><br>CIGNA d/b/a EVERNORTH BEHAVIORAL HEALTH, LEGRAND NORTH AMERICA, and the LEGRAND NORTH AMERICA HEALTH & WELFARE BENEFIT PLAN,<br><br>        Defendants. | COMPLAINT |

Plaintiff Stephanie F., individually and on behalf of H.H. a minor, through her undersigned counsel, complains and alleges against Defendants Cigna d/b/a Evernorth Behavioral Health ("Cigna"), Legrand North America (the "Plan Admin"), and (the Legrand North America Health & Welfare Benefit Plan ("the Plan") as follows:

//

//

**PARTIES, JURISDICTION AND VENUE**

1

1. Stephanie and H.H. are natural persons residing in Maricopa County, Arizona. Stephanie is H.H.'s mother.

2. Cigna is an insurance company acting as third claims administrator, as well as the fiduciary under ERISA, for the Plan during the treatment at issue in this case.

3. At all relevant times Cigna acted as agent for the Plan and the Plan Admin.

4. The Plan Admin is the designated administrator for the Plan.

5. The Plan is a self-funded employee welfare benefits plan under 29 U.S.C. §1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"). Stephanie was a participant in the Plan and H.H. was a beneficiary of the Plan at all relevant times.

6. H.H. received medical care and treatment at Arivaca Boys Ranch ("ABR") beginning on January 2, 2022. ABR was an Arizona based facility which provided sub-acute inpatient treatment to adolescents with mental health, behavioral, and/or substance abuse problems.

7. Cigna denied claims for payment of H.H.'s medical expenses in connection with his treatment at ABR.

8. This Court has jurisdiction over this case under 29 U.S.C. §1132(e)(1) and 28 U.S.C. §1331.

9. Venue is appropriate under 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391(c) based on ERISA's nationwide service of process and venue provisions, and because Cigna and the Plan Admin have office locations and do business in Utah.

10. In addition, the Plaintiff has been informed and reasonably believes that litigating the case outside of Utah will likely lead to substantially increased litigation costs she will be responsible to pay and that would not be incurred if venue of the case remains in Utah. Finally, in light of the sensitive nature of the medical treatment at issue, it is the

Plaintiff's desire that the case be resolved in the State of Utah where it is more likely both Stephanie and H.H.'s privacy will be preserved.

11. The remedies the Plaintiff seeks under the terms of ERISA and under the Plan are for the benefits due under the terms of the Plan, for an award of statutory damages against the Plan Admin pursuant to 29 U.S.C. §1132(c) based on the failure of the Plan Admin and its agents, to produce within 30 days documents under which the Plan was established or operated, an award of prejudgment interest, and an award of attorney fees and costs pursuant to 29 U.S.C. §1132(g).

## BACKGROUND FACTS

### ABR

12. H.H. was admitted to ABR on January 2, 2022. Cigna initially approved this admission, but then denied payment from January 19, 2022, forward.

13. The January 19, 2022, denial letter stated that treatment was denied as:

> Based upon my review of the available clinical information and the MCG Behavioral Criteria Guidelines medical necessity is not met for continued stay at Residential Behavioral Health Level of Care, Child or Adolescent, ORG: B-902-RES from 01/19/2022 forward, as the information reported does not indicate that you are so impaired that you cannot carry out your essential daily functions. You have not developed new symptoms or behaviors that require the intensity of residential mental health treatment including access to 24 hour nursing care. You show long standing [sic] behaviors, and there is no information reported indicating that you are likely to improve with treatment services provided. Providers are available for your safe, effective treatment at a less restrictive level of care.

14. On January 27, 2022, Cecily Ruttenberg submitted an appeal on Stephanie and H.H.'s behalf. Cecily wrote that only the day before on January 26, 2022, H.H. had run away from ABR without permission. He broke into a locked shed, stole some clothing, and contacted some old friends he habitually used drugs with to retrieve him. He was found by the police later that night.

3

15. She wrote that this wasn't H.H.'s first attempt to escape, and he stated that if he were able to leave the program, he would continue to use drugs. She wrote that in addition to being a flight risk, H.H. had recently stolen a laptop out of a staff member's vehicle, had been caught self-harming while in treatment, was disrespectful to staff, and often refused to participate in his schooling.

16. Cecily went through the MCG Guidelines that Cigna alleged had not been met. She wrote that H.H. was a danger to himself as he had self-harmed, had attempted to flee from the program, and had serious dysfunction in daily living due to his refusal to participate in schooling and his desire to abuse substances.

17. She wrote that Cigna was improperly relying on extra-contractual requirements such as 24-hour nursing care and a likelihood for improvement which were not present in the MCG guidelines in evaluating the coverage criteria under the Plan.

18. Cecily stated that it was too early to determine whether any improvement had been made, that it very commonly took at least four to six weeks for any evidence of progress to appear, and that outcomes were better when an individual received treatment for three months or more.

19. She argued that H.H. was receiving treatment at the appropriate level of care and that he was likely to resume his drug use if he returned home prematurely. She wrote that H.H. had a history of consorting with gang members, breaking into homes, using stolen credit cards, and dealing drugs.

20. She noted other concerning factors as well, including H.H.'s severe anxiety, obsessive compulsive behaviors, alcohol abuse, family history of depression and bipolar disorder, and frequent episodes of going days without eating.

21. In a letter dated January 28, 2022, Cigna upheld the denial of payment or H.H.'s treatment. The letter gave the following justification for the denial:

    > Based upon my review of the available clinical information received initially and with this appeal and the MCG Behavioral Criteria Guidelines medical necessity [sic] is not met for continued stay at Residential Behavioral Health Level of Care, Child or Adolescent, ORG: B-902-RES from 01/19/2022 forward, as you are not sufficiently stabilized so that you can be safely and effectively treated at this level of care. The treatment plan implemented is not leading to measurable clinical improvements in major symptoms and a progression towards discharge from the present level of care. There is no reasonable, medically indicated reassessment and modification to the treatment plan as you have developed symptoms and/or behaviors which indicate a diagnosis and treatment approach which requires a higher intensity of service for safe and effective treatment.

22. On February 28, 2022, Cecily asked for the denial of payment to be evaluated by an external review agency. She pointed out that Cigna had completely reversed its justification for denying payment, and that while it initially claimed that H.H. should have been treated at a lower level of care, in it its most recent denial, it claimed the opposite was true, and only a higher level of care could appropriately address H.H.'s behaviors.

23. She noted that Cigna's reviewer conducted a peer review but at the time had not yet reviewed the appeal or medical records. Cigna's reviewer had the records faxed to him and then called back almost immediately only five minutes later. Cigna's reviewer stated that even though the first Cigna reviewer had recommended partial hospitalization care, he was going to recommend inpatient hospitalization.

24. When told that H.H. was not currently suicidal, homicidal, or psychotic, Cigna's reviewer continued to recommend inpatient hospitalization. The peer reviewer then asked if H.H. belonged in a hospital bed, and the Cigna reviewer replied "I don't know," yet still recommended inpatient hospitalization.

25. Cecily wrote that she was skeptical that Cigna's reviewer would have been able to adequately study the submitted clinical materials in only five minutes time and questioned how thorough Cigna's review was.

26. She included updated medical records with the appeal which showed that H.H. had made progress such as having an ankle monitor removed due to no longer being a flight risk, but still exhibited concerning behaviors such as trying to drink hand sanitizer and experiencing drug cravings.

27. She continued to assert that H.H. met the requirements in the MCG Guidelines and continued to exhibit unsafe behaviors.

28. In a letter dated March 4, 2022, the external review agency upheld the denial of payment for H.H.'s treatment. The reviewer wrote in pertinent part:

> In this case, there were no symptoms or safety concerns that would have warranted the continued treatment in a residential level of care. The extent and intensity of services and structure required in this case indicated therapeutic services could have been more effectively provided at a higher level of care in a more restrictive setting, as the health plan asserts in the denial of coverage. Thus, per the Summary Plan Description (SPD) the requested benefit of Residential Mental Health Treatment, DOS: 01/19/2022 is not considered clinically appropriate and not medically necessary, as required for coverage under the plan's definition of medical necessity and is not a covered health service.
>
> Thus, the requested benefit of Continued Residential Mental Health Treatment is an exclusion of coverage, as not medically necessary. The patient's symptoms depression and anxiety and symptoms related to the parent child relational/communication problems are amenable to treatment with higher level services in a more restrictive environment with intensive services including family focused sessions; and, therapeutic interventions to address the recent use of cannabis, and to address the problematic behaviors related to oppositional and defiant disorder. The patient was not showing measurable improvement as the health plan asserted and needed evidence based psychosocial treatments and involvement with age-appropriate recovery groups to address the poly-substance use as well as the comorbid conditions. The psychosocial stressors were severe enough to prevent ongoing assessment and treatment at a residential level of care in this case scenario. The clinical course that included disruptive and antisocial behaviors further warranted treatment in a more restrictive level of care with intensive treatment to address the co-occurring psychiatric and substance use disorders.

29. The Plaintiff exhausted her pre-litigation appeal obligations under the terms of the Plan and ERISA.

### Request for Production of Documents

30. In a letter dated August 22, 2022, which was received by the Plan on September 2, 2022, and was confirmed to be delivered to Cigna on August 26, 2022, Stephanie requested certain documents to which she was entitled under ERISA and the terms of the Plan. In particular she requested:

> • Disclosure of the identities of all individuals with clinical or medical expertise who evaluated the treatment for my son, [H.H.], at Arivaca Boys Ranch, copies of those individuals' *curriculum vitae*, copies of any memoranda, emails, reports, or other documents reflecting the rationale of the reviewers in denying coverage for [H.H.]'s claim;
> • A complete copy of both the medical necessity criteria utilized by Cigna/Evernorth Behavioral Health Inc., in determining that [H.H.]'s treatment was not medically necessary and that treatment for him at a lower level of care was appropriate.
> • A complete copy of the medical necessity criteria utilized by the Plan for skilled nursing facilities, sub-acute inpatient rehabilitation treatment, and inpatient hospice treatment. This is necessary to allow me to carry out an evaluation of whether the Plan has complied with the requirements of the federal Mental Health Parity and Addiction Equity Act;
> • Complete copies of any and all internal records compiled by Cigna and Evernorth Behavioral Health Inc., and Legrand North America Health & Welfare Benefit Plan in connection with [H.H.]'s claim including, but not limited to, telephone logs, memoranda, notes, emails, correspondence, or any other communications;
> • A copy of the summary plan description, master plan document, certificate of insurance, insurance policy, and any other document under which [H.H.]'s insurance plan is operated;
> • Copies of any and all administrative service agreements, contracts or other documents which described and defined the relationship, rights and obligations of and between you, the plan administrator, and Cigna and Evernorth Behavioral Health Inc.;
> • Copies of any and all documents outlining the level of accreditation required for residential treatment programs;
> • Copies of any and all documents showing whether analogous levels of care to residential treatment programs also require these levels of accreditation; and

> • Copies of documents identifying the processes, strategies, evidentiary standards, and other factors used to apply a nonquantitative treatment limitation with respect to medical/surgical benefits and mental health or substance use disorder benefits under the plan

31. Both Cigna and the Plan Admin partially complied with this request for documents. In a letter dated September 21, 2022, Cigna provided a copy of the request letter Stephanie sent, copies of many of the materials she had submitted during the appeals process, copies of some of its guidelines for evaluating treatment, and a copy of the summary plan description.

32. In a letter which appears to be improperly dated as January 4, 2022, and was presumably intended to be dated January 4, 2023, the Plan Admin also responded to the request for documents. The Plan Admin included a copy of the summary plan description and stated that it would request the remaining documents from Cigna as they were in Cigna's possession.

33. The Plan Admin also stated that it was under a nondisclosure agreement concerning the administrative services agreement and could not provide this document without Cigna's consent.

34. Prior to litigation in this case, Stefanie received no further production of documents.

35. The denial of benefits for H.H.'s treatment was a breach of contract and caused Stephanie to incur medical expenses that should have been paid by the Plan in an amount totaling over $100,000.

## FIRST CAUSE OF ACTION

### (Claim for Recovery of Benefits Under 29 U.S.C. §1132(a)(1)(B))

36. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as Cigna,

acting as agent of the Plan, to discharge its duties in respect to claims processing solely in the interests of the participants and beneficiaries of the Plan. 29 U.S.C. §1104(a)(1).

37. Cigna and the Plan failed to provide coverage for H.H.'s treatment in violation of the express terms of the Plan, which promise benefits to employees and their dependents for medically necessary treatment of mental health and substance use disorders.

38. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with plaintiffs in the pre-litigation appeal process. 29 U.S.C. §1133(2).

39. The denial letters produced by Cigna do little to elucidate whether Cigna conducted a meaningful analysis of the plaintiff's appeals or whether it provided her with the "full and fair review" to which she is entitled. Cigna failed to substantively respond to the issues presented in Stephanie's appeals and did not meaningfully address the arguments or concerns that the Plaintiff raised during the appeals process.

40. Factors such as Cigna's inability to decide whether the treatment H.H. received was too intensive or not intensive enough, or its reviewer's five minute assessment of the clinical records cast doubt on the appropriateness of Cigna's decision.

41. Cigna and the agents of the Plan breached their fiduciary duties to H.H. when they failed to comply with their obligations under 29 U.S.C. §1104 and 29 U.S.C. §1133 to act solely in H.H.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of H.H.'s claims.

42. The actions of Cigna and the Plan in failing to provide coverage for H.H.'s medically necessary treatment are a violation of the terms of the Plan and its medical necessity

criteria.

43. While the presentation of alternative or potentially inconsistent claims in the manner that Plaintiffs state in their first and second causes of action is specifically anticipated and allowed under F.R.Civ.P. 8, Plaintiffs contend they are entitled to relief and appropriate remedies under each cause of action.

## SECOND CAUSE OF ACTION

**(Request for Statutory Penalties Under 29 U.S.C. §1132(a)(1)(A) and (c))**

44. Cigna, acting as agent for the Plan Admin, is obligated to provide to participants and beneficiaries of the Plan within 30 days after request, documents under which the Plan was established or operated, including but not limited to any administrative service agreements between the Plan and Cigna, the medical necessity criteria for mental health and substance abuse and medical necessity criteria for skilled nursing and rehabilitation facilities.

45. Despite Stephanie's requests during the appeal process for Cigna to produce the documents under which the Plan was operated, Cigna failed to produce to the Plaintiff many of the documents under which the Plan was operated, including but not limited to any administrative service agreements between the Plan and Cigna.

46. Despite Stephanie's entitlement to documents such as the administrative service agreement, she was not provided with these documents.

47. The failure of the Plan Admin and its agent Cigna, to produce the documents under which the Plan was operated, as requested by the Plaintiff, within 30 days of Stephanie's request for ERISA documents, provides the factual and legal basis under 29 U.S.C. §1132(a)(1)(A) and (c) for this Court to impose statutory penalties up to $110 per day on

the Plan Admin from 30 days from the date of each of these letters to the date of the production of the requested documents.

48. In addition, Plaintiff is entitled to an award of prejudgment interest pursuant to U.C.A. §15-1-1, and attorney fees and costs pursuant to 29 U.S.C. §1132(g)

WHEREFORE, the Plaintiff seeks relief as follows:

1. Judgment in the amount owed for H.H.'s medically necessary treatment at ABR under the terms of the Plan, plus pre and post-judgment interest;
2. For an award of statutory penalties of up to $110 a day against the Plan Admin after the first 30 days for each instance of the Plan Admin and its agent Cigna's failure or refusal to fulfill their duties, to provide the Plaintiff with the documents she had requested;
3. Attorney fees and costs incurred pursuant to 29 U.S.C. §1132(g); and
4. For such further relief as the Court deems just and proper.

DATED this 22nd day of September, 2023.

By    s/ Brian S. King
      Brian S. King
      Attorney for Plaintiff

County of Plaintiff's Residence:
Maricopa County, Arizona